IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STEVE MOFFETT**, on behalf of himself and others similarly situated, | : :  Case No. __23-1716__ |
| Plaintiff, | : : |
| v. | : : **COLLECTIVE AND CLASS ACTION** : **COMPLAINT FOR VIOLATIONS OF** : **THE FAIR LABOR STANDARDS ACT** |
| **KRAFT HEINZ FOODS COMPANY**, | : : **JURY DEMAND ENDORSED HEREON** |
| Defendant. | : : |

Named Plaintiff Steve Moffett ("Named Plaintiff"), individually and on behalf of others similarly situated, files this Collective and Class Action Complaint against Defendant Kraft Heinz Foods Company ("Defendant") for its failure to pay employees all overtime wages earned, seeking all available relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq*. The following allegations are based on personal knowledge as to Named Plaintiff's own conduct and are made on information and belief as to the acts of others. Named Plaintiff, individually and on behalf of others similarly situated, hereby states as follows:

## INTRODUCTION

1. This case challenges certain policies and practices of Defendant that violate the FLSA and the IMWL for failure to pay all compensable time, resulting in unpaid overtime.

2. Named Plaintiff brings this case as a "collective action" pursuant to 29 U.S.C. §216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." Named Plaintiff brings this case on behalf

of himself and other "similarly situated" persons who may join this case pursuant to § 216(b) (the "Opt-Ins").

3. Named Plaintiff also brings this claim as a class action pursuant to Fed. R. Civ. P. 23 to remedy violations of the IMWL on behalf of other similarly situated employees employed by Defendant in Illinois.

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5. Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Defendant operates in this District, is headquartered in this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

6. The Court has supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367 because the claims are so related to the FLSA claims as to form part of the same case or controversy.

## PARTIES

A. **Named Plaintiff**

7. Named Plaintiff is an individual, a United States citizen, and a resident of the State of Illinois. Named Plaintiff's consent is attached as **Exhibit A**.

8. Named Plaintiff was employed by Defendant from approximately February 2023 through September 5, 2023, as an hourly, non-exempt production "employee" of Defendant as defined in the FLSA and the IMWL. Specifically, Named Plaintiff worked as a laborer, forklift operator, and other positions, while employed by Defendant at its location in Champaign, Illinois.

9. During his employment, Named Plaintiff worked 40 or more hours in one or more workweek(s).

10. During his employment, Defendant did not compensate Named Plaintiff for integral and indispensable work. As a result, Named Plaintiff was not fully and properly paid for all hours worked in violation of the FLSA and the IMWL.

11. Likewise, Defendant applied the unlawful pay practice and/or policy alleged herein to its other similarly situated hourly, non-exempt employees. These similarly situated hourly employees worked 40 or more hours in given workweeks. Defendant's practices and/or policies resulted in these similarly situated hourly employees not being paid overtime wages earned in violation of the FLSA the IMWL.

**B.** **Defendant**

12. Defendant is a for-profit Pennsylvania corporation with a corporate headquarters located at 1 PPG Place, Suite 3400, Pittsburgh, Pennsylvania 15222 (Allegheny County).

13. Defendant is engaged in commerce within the meaning of the FLSA, 29 U.S.C. §203(s)(1), in that it has employees, including Named Plaintiff and others similarly situated, engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

14. Defendant has an annual gross volume of sales made or business done of not less than $500,000.00.

15. Defendant employed Named Plaintiff and other similarly situated employees at its facilities across the country.

16. Defendant applies substantially the same employment policies, practices, and procedures to all employees across all locations, including policies, practices, and procedures relating to the payment of wages, overtime, and timekeeping.

17. At all relevant times, Defendant suffered or permitted Named Plaintiff and other similarly situated hourly production employees to work. The work that Named Plaintiff and other similarly situated hourly production employees performed was for Defendant's benefit and was integral and indispensable to the work they were hired to perform.

18. At all times relevant hereto, Defendant was fully aware of the fact that they were legally required to comply with the FLSA and the IMWL.

## FACTS

19. Defendant manufactures, package, distribute, and sell food products throughout the United States.

20. As a manufacturer of food products, Defendant is regulated by the U.S. Food and Drug Administration ("FDA"), and are subject to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 9, *et seq.* (hereinafter "FDCA").

21. In enforcing the FDCA, the FDA promulgates its own Good Manufacturing Practices ("GMPs") for the manufacturing, packing, or holding of human food, set forth in 21 C.F.R. § 110, with which Defendant are required by law to comply.

22. The GMPs have a section dedicated to personnel, which specifically requires that "[a]ll persons working in direct contact with food, food-contact surfaces, and food-packaging materials ***shall conform to hygienic practices while on duty*** to the extent necessary to protect against contamination of food." 21 C.F.R. § 110.10(b) (emphasis added). These practices include, but are not limited to:

(a) Wearing outer garments suitable to the operation in a manner that protects against the contamination of food, food-contact surfaces, or food-packaging materials.

(b) Maintaining adequate personal cleanliness.

(c) Washing hands thoroughly (and sanitizing if necessary to protect against contamination with undesirable microorganisms) in an adequate hand-washing facility before starting work, after each absence from the work station, and at any other time when the hands may have become soiled or contaminated.

(d) Removing all unsecured jewelry and other objects that might fall into food, equipment, or containers, and removing hand jewelry that cannot be adequately sanitized during periods in which food is manipulated by hand. If such hand jewelry cannot be removed, it may be covered by material which can be maintained in an intact, clean, and sanitary condition and which effectively protects against the contamination by these objects of the food, food-contact surfaces, or food-packaging materials.

(e) Maintaining gloves, if they are used in food handling, in an intact, clean, and sanitary condition. The gloves should be of an impermeable material.

(f) Wearing, where appropriate, in an effective manner, hair nets, headbands, caps, beard covers, or other effective hair restraints.

(g) Storing clothing or other personal belongings in areas other than where food is exposed or where equipment or utensils are washed.

(h) Confining the following to areas other than where food may be exposed or where equipment or utensils are washed: eating food, chewing gum, drinking beverages, or using tobacco.

(i) Taking any other necessary precautions to protect against contamination of food, food-contact surfaces, or food-packaging materials with microorganisms or foreign substances including, but not limited to, perspiration, hair, cosmetics, tobacco, chemicals, and medicines applied to the skin.

23. Notably, "[r]esponsibility for assuring compliance by all personnel with all requirements of this part shall be clearly assigned to competent supervisory personnel." 21 C.F.R. §110.10(d).

24. The FDCA prohibits the adulteration of food, and the introduction or delivery for introduction into interstate commerce of any adulterated food. 21 U.S.C. § 331.

25. Food is considered adulterated "if it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health[.]" 21 U.S.C. § 342(a)(4).

26. Any person who violates 21 U.S.C. § 331 "shall be imprisoned for not more than one year or fined not more than $1,000, or both." 21 U.S.C. § 333(a)(1).

27. In determining whether food is adulterated, the FDA applies the criteria and definitions set forth in the GMPs. 21 C.F.R. § 110.5(a).

28. Consequently, if Defendant's employees did not follow the GMPs set forth in 21 C.F.R. § 110.10(b), they could be held criminally liable under 21 U.S.C. § 333(a)(1).

29. Thus, it would be impossible for Plaintiff and those similarly situated, who were engaged in the manufacturing, packaging, and handling of food products, to perform their work duties unless they wore sanitary clothing and other protective equipment.

30. Indeed, if Plaintiff and those similarly situated did not follow federal law and wear sanitary clothing and other personal protective equipment, it is possible, if not likely, that this would cause the spread of food-borne pathogens to those who consumed Defendant's products.

31. Upon information and belief, Defendant would not want to endanger the public by encouraging or permitting its employees to disregard federal and/or state food-safety laws.

32. Upon information and belief, Defendant would deem it impossible for its employees to perform their job duties unless they were in compliance with federal or state food safety laws, including the laws requiring Defendant's employees to wear sanitary and other protective equipment.

33. As a result, compliance with the GMPs by Defendant's employees involved in the manufacturing, packaging, and handling of food is integral and indispensable to the work they are hired to do.

34. Compliance with the GMPs by Defendant's employees involved in the manufacturing, packaging, and handling of food is an intrinsic element of their activities and one in which they cannot dispense if they are to perform their principal activities.

35. Compliance with the GMPs by Defendant's employees involved in the manufacturing, packaging, and handling of food is a component of the work they are hired to do.

36. Unless Defendant's employees involved in the manufacturing, packaging, and handling of food comply with the GMPs, they cannot complete their work.

37. Therefore, the donning and doffing of sanitary clothing and other protective equipment, as well as handwashing, are integral and indispensable to the work performed by Defendant's employees who are involved in the manufacturing, packaging, and handling of food.

38. Because the donning and doffing of sanitary clothing and other protective equipment, and handwashing, are integral and indispensable to the work performed by Defendant's employees who are involved in the manufacturing, packaging, and handling of food, the time spent donning and doffing and handwashing are compensable work time within the meaning of the FLSA and IMWL.

39. The donning of sanitary clothing and other protective equipment by Defendant's employees involved in the manufacturing, packaging, and handling of food is those employees' first principal activity of the day.

40. The doffing of sanitary clothing and other protective equipment by Defendant's employees involved in the manufacturing, packaging, and handling of food is those employees' last principal activity of the day.

41. Plaintiff was jointly employed by Defendant in the last three years at its facility in Champaign, Illinois. Plaintiff's job duties involved the manufacturing, packaging, and handling of food products. Other similarly situated employees are and were jointly employed by Defendant in the

manufacturing, packaging, and handling of food, at Defendant's Champaign, Illinois manufacturing facility and across the country.

42. Because Plaintiff and other similarly situated employees are involved in the manufacturing, packaging, or handling of food, to comply with the GMPs they must wear sanitary clothing and other protective equipment, including, but not limited to, sanitary clothing such as uniforms, boots, safety glasses, non-cut gloves, hair nets, beard nets, ear plugs, and hard hat/helmets.

43. Plaintiff and other similarly situated employees who are involved in the manufacturing, packaging, or handling of food cannot complete their work unless they are wearing sanitary clothing and other protective equipment.

44. Compliance with the GMPs by Plaintiff and other similarly situated employees is integral and indispensable to the work they are hired to do.

45. Compliance with the GMPs by Plaintiff and other similarly situated employees is a component of the work they are hired to do.

46. Compliance with the GMPs by Plaintiff and other similarly situated employees is an intrinsic element of their activities and one in which they cannot dispense if they are to perform their principal activities.

47. The donning and doffing of sanitary clothing and other protective equipment is integral and indispensable to the work performed by Plaintiff and other similarly situated employees.

48. The donning and doffing of sanitary clothing and other protective equipment by Plaintiff and other similarly situated employees is a component of the work they are hired to do.

49. The donning and doffing of sanitary clothing and other protective equipment by Plaintiff and other similarly situated employees is an intrinsic element of their activities and one in which they cannot dispense if they are to perform their principal activities.

50. The donning of this sanitary clothing by Plaintiff and other similarly situated employees was those employees' first principal activity of the day.

51. Likewise, at the end of their work shift, Plaintiff and other similarly situated employees were required to remove, or doff, their sanitary clothing.

52. The doffing of sanitary clothing by Plaintiff and other similarly situated employees is those employees' last principal activity of the day.

53. Plaintiff and other similarly situated employees were non-exempt employees under the FLSA and Illinois law and were paid an hourly wage.

54. Within the last three years, Defendant required Plaintiff and other similarly situated employees to don sanitary clothing and other protective equipment, and wash their hands, dry their hands, sanitize their hands, and walk through a footbath, while at Defendant's facility, but prior to clocking in at the start of their shift.

55. Plaintiff and others similarly situated also had to obtain machine lockouts before starting their shifts.

56. Plaintiff and other similarly situated employees were not paid for this time, nor were they paid for the associated walking and waiting time.

57. Within the last three years, Defendant required Plaintiff and other similarly situated employees to wash their hands, dry their hands, sanitize their hands, and walk through a foot bath before entering the food manufacturing facility. Plaintiff and other similarly situated employees were not paid for this time.

58. At the end of their scheduled shift, Plaintiff and other similarly situated employees were required to clock out and then doff their sanitary clothing and other protective equipment and

return their machine lockouts. Plaintiff and other similarly situated employees were not paid for this time.

59. Plaintiff and other similarly situated employees, as full-time employees, regularly worked 40 or more hours in a workweek in the last three years, including the unpaid pre- and post-shift work.

60. As a result of Plaintiff and other similarly situated employees not being paid for all hours worked, Plaintiff and other similarly situated employees were not paid overtime compensation for all of the hours they worked in excess of 40 each workweek.

61. Defendant knowingly and willfully engaged in the above-mentioned violations of the FLSA and IMWL. Managers and supervisors knew Plaintiff and others similarly situated were performing this work and not being paid for it.

62. The amount of time Plaintiff and other similarly situated employees spent performing unpaid work was at least approximately 15 to 30 minutes or more each day. Plaintiff and others similarly situated regularly worked six days a week. So, this resulted in at least approximately 1.5 to 3 hours or more of unpaid overtime per class member, per week.

## COLLECTIVE ACTION ALLEGATIONS

63. Plaintiff brings this action on her own behalf pursuant to 29 U.S.C. § 216(b), and on behalf of all other similarly situated persons who have been, are being, or will be, adversely affected by Defendant's unlawful conduct.

64. The class that Plaintiff seeks to represent and for whom Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiff is herself a member, is composed of and defined as follows:

> **All current and former hourly employees who performed work for Defendant and who were involved in the manufacturing, packaging, or handling of food or**

**food products and who were required to don and/or doff sanitary clothing and other protective equipment and who worked 40 or more hours during a workweek at any time from three (3) years preceding this Complaint through final disposition of this matter**.

65. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA. In addition to Plaintiff, numerous current and former employees are similarly situated with regard to their claims for unpaid wages and damages. Plaintiff is representative of those other employees and is acting on behalf of their interests as well as his own in bringing this action.

66. These similarly situated employees are known to Defendant and are readily identifiable through Defendant's payroll records. These individuals may readily be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

## RULE 23 CLASS ALLEGATIONS

67. Named Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of himself and all a class of persons employed by Defendant in Illinois within the last three (3) years ("Illinois Class") defined as:

> **All current and former hourly employees who performed work for Defendant in Illinois and who were involved in the manufacturing, packaging, or handling of food or food products and who were required to don and/or doff sanitary clothing and other protective equipment and who worked 40 or more hours during a workweek at any time from three (3) years preceding this Complaint through final disposition of this matter**.

68. The lass is so numerous that joinder of all class members is impracticable. Named Plaintiff is unable to state the exact size of the potential Illinois Class but, upon information and belief, avers that it consists of at least more than 50 people.

69. There are questions of law or fact common to the Illinois Class including whether Defendant failed to pay its employees for all earned overtime.

70. Named Plaintiff will adequately protect the interests of the Illinois Class. His interests are not antagonistic to but, rather, are in unison with, the interests of the Illinois Class members. Named Plaintiff's counsel has broad experience in handling class action wage-and-hour litigation and are fully qualified to prosecute the claims of the Illinois Class in this case.

71. The questions of law or fact that are common to the Illinois Class predominate over any questions affecting only individual members. The primary questions that will determine Defendant's liability to the Illinois Class are common to the class and predominate over any questions affecting only individual class members.

72. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Illinois Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Illinois Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## CAUSES OF ACTION

### COUNT ONE
### (FLSA – Collective Action for Unpaid Overtime)

73. All preceding paragraphs are realleged as if fully rewritten herein.

74. This claim is brought as part of a collective action by Named Plaintiff on behalf of himself and the FLSA Collective.

75. The FLSA requires that employees receive overtime compensation at one-and-one-half times (1.5x) their regular rates of pay for hours worked in excess of 40 per workweek. 29 U.S.C. § 207(a)(1).

76. Defendant employed Named Plaintiff and the FLSA Collective Members.

77. Named Plaintiff and the FLSA Collective Members were paid on an hourly basis and worked in non-exempt positions.

78. Named Plaintiff and the FLSA Collective Members regularly worked in excess of 40 hours in one or more workweek(s) but were not paid for all overtime hours worked.

79. Defendant violated the FLSA with respect to Named Plaintiff and the FLSA Collective Members by failing to pay overtime for certain hours worked over 40 hours in a workweek at one-and-one-half times (1.5x) their regular rates of pay because of Defendant's companywide policy and/or practice described herein.

80. Named Plaintiff and the FLSA Collective Members were not exempt from receiving FLSA overtime benefits.

81. Defendant knew or should have known of the overtime payment requirements of the FLSA. Despite such knowledge, Defendant willfully withheld and failed to pay the overtime compensation to which Named Plaintiff and the FLSA Collective Members are entitled.

82. The exact total amount of compensation, including overtime compensation, that Defendant have failed to pay Named Plaintiff and the FLSA Collective Members is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendant or were not kept by Defendant.

83. As a direct and proximate result of Defendant's conduct, Named Plaintiff and the FLSA Collective Members have suffered and continue to suffer damages. Named Plaintiff seek

unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available on behalf of himself and the FLSA Collective Members.

## COUNT TWO
### (Illinois Class Overtime Violations)

84. All preceding paragraphs are realleged as if fully rewritten herein.

85. At all relevant times, Named Plaintiff and other similarly situated employees worked for Defendant as hourly non-exempt employees.

86. At all relevant times, Named Plaintiff and other similarly situated employees regularly worked more than 40 hours per workweek for Defendant.

87. The IMWL requires that Defendant pay its hourly non-exempt employees, including Named Plaintiff and other similarly situated employees, overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 hours per workweek.

88. During their employment with Defendant, Named Plaintiff and other similarly situated employees were required to perform unpaid compensable work, resulting in unpaid overtime in violation of IMWL 820 ILCS 105/1 *et seq*.

89. By engaging in the above-mentioned conduct, Defendant willfully, knowingly, and/or recklessly violated provisions of the IMWL.

90. As a result of Defendant's practices and policies, Plaintiff and other similarly situated employees have been damaged in that they have not received wages due to them pursuant to the IMWL

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and all persons similarly situated, prays that this Honorable Court:

A. Conditionally certify this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b) and direct that Court-approved notice be issued to similarly situated persons informing them of this action and enabling them to opt-in;

B. Certify this case as a class action under Fed. R. Civ. P. 23 as to the Illinois Class;

C. Enter judgment against Defendant and in favor of Plaintiff, the Opt-Ins who join this case pursuant to the FLSA and the Illinois Class pursuant to the IMWL;

D. Award Plaintiff, the Opt-Ins who join this case pursuant to the FLSA and the Illinois Class actual damages for unpaid wages;

E. Award liquidated damages to Plaintiff, the Opt-Ins who join this case pursuant to the FLSA and the Illinois Class to the maximum amount permitted by applicable law (100% under the FLSA and 200% under the IMWL);

F. Award Plaintiff and the Illinois Class statutory damages for overtime wage violations pursuant to the 5% interest penalties for IMWL violations;

G. Award Plaintiff, the Opt-Ins who join this case pursuant to the FLSA and the Illinois Class attorneys' fees, costs, and disbursements; and,

H. Award Plaintiff, the Opt-Ins who join this case pursuant to the FLSA and the Illinois Class and the putative class further and additional relief as this Court deems just and proper.

## JURY DEMAND

Named Plaintiff hereby demand a trial by jury on all claims so triable.

Dated: September 29, 2023

Respectfully submitted,

**NILGES DRAHER LLC**

*/s/ Robi J. Baishnab*
Robi J. Baishnab (OH Bar 0086195)
Jeffrey J. Moyle (OH Bar 0084854
1360 East 9th Street, Ste. 808
Cleveland, OH 44114
Telephone: (216) 230-2944
Facsimile: (330) 754-1430
Email: rbaishnab@ohlaborlaw.com

*Attorneys for Named Plaintiff
and those similarly situated.*